UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| J & S OIL CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:14-cv-00016-JDL |
| HDI-GERLING AMERICA | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This diversity action involves an insurance dispute between plaintiff J&S Oil Co., Inc. and defendant HDI-Gerling America Insurance Company. J&S Oil alleges that HDI-Gerling breached an insurance agreement between the parties by refusing to reimburse it for expenses related to an oil spill on its property. ECF No. 2 at 5. The parties have cross-motioned for summary judgment. ECF No. 17 at 1; ECF No. 19 at 1.[1] After careful consideration, I deny J&S Oil's motion and grant HDI-Gerling's motion.

**I. FACTUAL BACKGROUND**

On the issue of liability, few facts are in dispute.[2] In March of 2012, 1,500 gallons of oil leaked out of an oil tanker at J&S Oil's headquarters in Manchester,

---

[1] While HDI-Gerling's responsive motion is captioned only as an objection to J&S Oil's motion, HDI-Gerling makes clear that its motion should be treated as a cross-motion for summary judgment. ECF No. 19 at 1.

[2] While the parties generally agree on the relevant facts necessary to determine liability, there are disputes as to damages. *See, e.g.*, ECF No. 18 at 3; ECF No. 20 at 2. Because I find for HDI-Gerling

Maine. ECF No. 18 at 2; ECF No. 20 at 1. The tanker from which the spill came was a "tanker trailer" that J&S Oil employed to store used motor oil. *Id.* When the spill occurred, the tanker trailer was stored in a parking lot on J&S Oil's property. ECF No. 21 at 2; ECF No. 23 at 4.

The tanker trailer was designed for use on public roads, but needed to be towed to move any distance. ECF No. 18 at 5; ECF No. 20 at 4. J&S Oil purchased the tanker trailer several years prior to the oil spill, intending to use it to transport oil from its headquarters in Manchester to its car wash in Waterville. ECF No. 21 at 2; ECF No. 23 at 3-4. However, J&S Oil never removed the trailer from its Manchester property. *Id.* Instead, the tanker trailer was used exclusively to store oil in Manchester and to transport oil within the confines of the Manchester facility. ECF No. 18 at 4; ECF No. 20 at 3.

The tanker trailer was moved around the Manchester facility by way of an access road. *Id.* The road is owned by John Babb, Sr., a part owner of J&S Oil. ECF No. 21 at 3; ECF No. 23 at 5-6. J&S Oil plows and maintains the access road, without state funds or assistance. *Id.*

During its ownership of the tanker trailer, J&S Oil never registered the tanker trailer with the state of Maine, or had the tanker trailer inspected. ECF No. 18 at 5; ECF No. 20 at 4.

At the time of the oil spill, the parties had entered into a commercial automobile insurance policy (the "Policy"). ECF No. 18 at 6; ECF No. 20 at 4. The

---

on the liability issue and do not reach the damages question, I make no findings of fact with respect to damages.

Policy was issued by HDI-Gerling to J&S Oil through HDI-Gerling's insurance agent, Energi Insurance Services ("Energi"). *Id.* Prior to the oil spill, Energi had inspected the Manchester property and was aware of the tanker trailer's presence. ECF No. 21 at 5; ECF No. 23 at 10. A representative from J&S Oil claims that during this inspection he told the Energi agent how the tanker trailer was used. *Id.* Nothing in the record indicates that Energi and J&S Oil ever discussed whether or not the tanker trailer was covered under the Policy. *See id.*

The Policy provides that HDI-Gerling will pay all sums that an insured is obligated to pay as "covered pollution cost or expense" related to the "ownership, maintenance or use of covered 'autos.'" ECF No. 18 at 7; ECF No. 20 at 5. The meaning of "autos" is the crux of this dispute.

The Policy defines "auto" as follows:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

ECF No. 18-6 at 39.

The Policy defines "mobile equipment," in relevant part, as:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
2. Vehicles maintained for use solely on or next to premises you own or rent;

. . .

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor

3

>vehicle insurance law where it is licensed or principally garaged.  Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

ECF No. 18-6 at 40-41.

## II. SUMMARY JUDGMENT STANDARD

### A.    Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).  In making that determination, a court must view the evidence in the light most favorable to the non-moving party.  *Johnson v. Univ. of Puerto Rico,* 714 F.3d 48, 52 (1st Cir. 2013).

"This framework is not altered by the presence of cross-motions for summary judgment."  *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn."  *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se.*  Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.  As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

4

## B.  Local Rule 56

Local Rule 56 defines the evidence that this court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment. First, the moving party must file a statement of material facts that it claims are not in dispute, with each fact presented in a numbered paragraph and supported by a specific citation to the record. *See* Loc. R. 56(b). Second, the non-moving party must submit its own short and concise statement of material facts in which it admits, denies, or qualifies the facts alleged by the moving party, making sure to reference each numbered paragraph of the moving party's statement and to support each denial or qualification with a specific citation to the record. Loc. R. 56(c). The non-moving party may also include its own additional statement of facts that it contends are not in dispute. *Id.* Third, the moving party must then submit a reply statement of material facts in which it admits, denies, or qualifies the non-moving party's additional facts, if any. Loc. R. 56(d).

The court may disregard any statement of fact that is not supported by a specific citation to the record, and the court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." Loc. R. 56(f). Properly supported facts that are contained in a statement of material or additional facts are deemed admitted unless properly controverted. *Id.*

## III. LEGAL ANALYSIS

### A.   Whether the Tanker Trailer was Covered under the Policy

The central issue is whether the tanker trailer should be categorized as an "auto" or as "mobile equipment" under the Policy.  J&S Oil argues that the tanker trailer was an "auto," and thus covered for pollution expenses, *see* ECF No. 17 at 5, while HDI-Gerling contends that it was "mobile equipment," and thus not covered, *see* ECF No. 19 at 2.

The meaning of the language in an insurance contract is a question of law. *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 10, 942 A.2d 1213.  Courts interpret unambiguous language according to its plain meaning.  *Jack v. Tracy*, 1999 ME 13, ¶ 8, 722 A.2d 869.  Any ambiguity in a contract is construed against the insurer.  *York Ins. Group of Me. v. Van Hall*, 1997 ME 230, ¶ 8, 704 A.2d 366. Ambiguity exists if the text is "reasonably susceptible of different interpretations." *Jipson*, 2008 ME 57, ¶ 10, 942 A.2d 1213.

As a threshold matter, I find that the relevant language of the Policy is unambiguous.  J&S Oil suggests that an ambiguity exists because a "trailer," which is specifically included in the definition of "auto," might supportably qualify as either an "auto" or "mobile equipment."  *See* ECF No. 22 at 4-5.  If the Policy's definitions of "auto" and "mobile equipment" did not reference each other, this argument might prevail.  However, a vehicle that falls under "mobile equipment" cannot, by definition, be an "auto."  *See* ECF No. 18-6 at 39.  There is therefore no ambiguity arising from the possibility that a "trailer" might simultaneously fit both categories.  J&S Oil does

6

not otherwise indicate how any term of the Policy is reasonably susceptible of different interpretations.

Turning to the plain language of the Policy, I conclude that the tanker trailer in question is within the definition of "mobile equipment." "Mobile equipment" includes "[v]ehicles maintained for use solely on or next to premises you own or rent[.]" ECF No. 18-6 at 40. The evidence shows that the tanker trailer was not registered, was not inspected, was put to use for storage and transportation of oil on J&S Oil's Manchester property, and never left that property during Plaintiff's ownership.[3] ECF No. 18 at 4-5; ECF No. 20 at 3-4; ECF No. 21 at 2; ECF No. 23 at 3-4. These undisputed facts demonstrate that the tanker trailer was maintained solely for use on J&S Oil's premises.

However, as J&S Oil notes, "mobile equipment" does not include "land vehicles that are subject to a compulsory or financial responsibility law[.]" ECF No. 18-6 at 41; *see also* ECF No. 22 at 4. The Maine statute governing this point is 29-A M.R.S.A. § 1601, which requires insurance coverage for "a vehicle registered in this State or required to be registered in this State[.]" 29-A M.R.S.A. § 1601(1). It is undisputed that the tanker trailer was not registered. ECF No. 18 at 5; ECF No. 20 at 4. As for whether the tanker trailer was required to be registered, Maine law requires registration for "a vehicle that is operated or remains on a public way[.]" 29-A M.R.S.A. § 351. Here, the undisputed facts show that the tanker trailer was used

---

[3] The fact that some maintenance was performed that would have made it technically possible to use the tanker trailer on public roads, *see* ECF No. 22 at 4, does not negate the fact that these other steps necessary for taking the tanker trailer off premises were not performed.

only on a privately-owned access road during J&S Oil's ownership.[4] *See* ECF No. 21 at 3; ECF No. 23 at 5-6. Accordingly, the tanker trailer was not registered or required to be registered, and, in turn, was not "subject to a compulsory or financial responsibility law." Thus, the tanker trailer was not excluded from the Policy's definition of "mobile equipment."

I am unpersuaded by J&S Oil's remaining arguments that the tanker trailer should be considered an "auto." J&S Oil stresses that the tanker trailer was designed for use on public roads. ECF No. 17 at 6. While such a trait is included in the definition of "auto," this is immaterial as long as the definition also includes the "mobile equipment" exclusion. Next, J&S Oil points out that the tanker trailer was registered as a vehicle both before J&S Oil purchased it and after J&S Oil sold it. ECF No. 17 at 7-8. Yet prior and subsequent ownership are irrelevant to a definition of "mobile equipment" that hinges on the current owner's particular maintenance of a vehicle.

Finally, J&S Oil cites two Law Court decisions, *Kimball v. New England Guar. Ins. Co.*, 642 A.2d 1347, 1348 (Me. 1994), and *Bowen v. Hanover Ins. Co.*, 599 A.2d 1150, 1151 (Me. 1991), for the proposition that the tanker trailer is an "auto." ECF No. 17 at 8. In each case, the Court found that the registration status of a vehicle

---

[4] J&S Oil asserts in its statement of material facts that the "access road on the Manchester property is a public way owned by a principal of J&S Oil and plowed and maintained by J&S oil at the company's own expense." ECF No. 18 at 5. This statement appears to be inherently contradictory – J&S Oil acknowledges the private ownership of the road, while simultaneously calling it "public." Moreover, the record citations given in support of this statement only reference the access road's private ownership. *See* ECF No. 18-1 at 5; ECF No. 18-2 at 1. I therefore do not credit J&S Oil's unsupported assertion that the access road on the Manchester property is a public way. *See* Loc. R. 56(f) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.")

was ultimately not dispositive of whether the vehicle belonged to a particular insurance category. However, both cases are distinguishable. The outcome of *Bowen* turned on the application of an insurance exclusion for vehicles in "dead storage," which is not at issue here. *Bowen*, 599 A.2d at 1151. Likewise, in *Kimball*, registration status was relevant to determining whether an unregistered truck was still "subject to motor vehicle registration" – a policy term not implicated in this case. *Kimball*, 642 A.2d at 1348.

**B.     Estoppel**

J&S Oil further argues that HDI-Gerling should be estopped from denying coverage because of the actions of its agent, Energi. ECF No. 17 at 11. A plaintiff seeking to estop an insurer from denying coverage must demonstrate: (1) unreasonable conduct on the part of the insurer that misleads the insured about the scope of coverage; and (2) justifiable and detrimental reliance on the part of the insured. *Maine Mut. Fire Ins. Co. v. Grant*, 674 A.2d 503, 504 (Me. 1996).

The undisputed facts show only that Energi was aware of the tanker trailer's presence on J&S Oil's premises, and how it was used. ECF No. 21 at 5; ECF No. 23 at 10. They do not establish the unreasonable conduct required by the first prong of the estoppel analysis. J&S Oil's motion for summary judgment is thus properly denied. Shifting to HDI-Gerling's cross-motion, Energi's mere knowledge of the tanker trailer's presence does not establish or support a reasonable inference that HDI-Gerling unreasonably misled J&S Oil about the scope of its coverage. I therefore grant HDI-Gerling's cross-motion on this issue.

J&S Oil further invokes 24-A M.R.S.A. § 2422, which governs the agency relationship between insurers and insurance agents. ECF No. 17 at 11. The statute provides that an insurer is "bound by [an agent's] knowledge of the risk and all matters connected therewith," and further provides that "misdescriptions known to the agent shall be regarded as known to the insurer[.]" 24-A M.R.S.A. § 2422(2). My analysis here tracks that above. No matter how the facts are viewed, the record contains no evidence that Energi knew of a misdescription in J&S Oil's coverage or knew that the tanker trailer posed risks typical of "autos," such as the possibility that it would be involved in a motor vehicle collision on public roads. Nor is there any evidence that would reasonably allow such knowledge to be inferred. Accordingly, J&S Oil cannot make out an estoppel claim.

## IV. CONCLUSION

For the foregoing reasons, J&S Oil's cross-motion for summary judgment (ECF No. 17) is **DENIED**. HDI-Gerling's cross-motion for summary judgment (ECF No. 19) is **GRANTED**.

**SO ORDERED.**

Dated: April 22, 2015              /s/ Jon D. Levy
                                   U.S. District Judge